IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 23 CR 242 |
| | ) | |
| ROBERT MITZIGA and | ) | |
| LUMNI LIKOVSKI | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Mitziga and Lumni Likovski are charged with conspiracy to commit bribery; Mitziga is charged with giving or offering a bribe to Likovski and others; and Likovski is charged with accepting or agreeing to accept a bribe from Mitziga and another individual referred to in the indictment as Individual A. According to the superseding indictment, Mitziga owned business property in the south suburbs, as did Individual A. Likovski, Basil Clausen (who has pled guilty and will testify for the government at trial), and Lavdim Memisovski (who is charged in a separate case) all worked for the Cook County Assessor's Office (CCAO), which assesses real estate for the purpose of determining property taxes. The indictment alleges that Mitziga and Individual A, both of whom were members of a private golf club in Bridgman, Michigan, told Clausen that they would invite and pay the cost for Clausen and other CCAO employees to play golf at the club if they would lower the assessments for Mitziga's and Individual A's properties. Clausen allegedly passed this information along to Likovski and Memisovski, and all of them agreed to and did use their positions at the CCAO, in return for the promised benefit, to circumvent random assignment rules, take other

steps, and ultimately reduce the assessments on the properties. Two golf outings allegedly took place in September and October 2017 (allegedly costing Mitziga and Individual A a total of about $3400), and after that, the assessed values for the two properties allegedly were reduced by Memisovski.

As of right now, both Mitziga and Likovski have indicated they intend to proceed to trial. Mitziga has moved to sever his trial from Likovski's. His primary ground for severance involves the government's intention to introduce at trial the following statement that Likovski made under oath before the grand jury that returned the indictment in this case (the Court has substituted the actual name of the golf club for a generic reference in the government's submission):

> Claussen [sic] twice arranged for [Memisovski] and me to golf at Lost Dunes for free. During one of the trips, Claussen mentioned that the member who got us on Lost Dunes had property in the south suburbs, which I understood meant that the member had property in the south suburbs that he wanted our help on with assessments. Within the next month or two, a substitution form for property owned by the Lost Dunes member was on my chair and I brought the form to the person responsible for handling the forms. I understood that the member gave us access to Lost Dunes because he wanted [Memisovski] to lower his assessments.

Mitziga argues that this statement directly implicates him (as "the member") and that its admission would violate his rights under the Confrontation Clause because he cannot cross-examine Likovski, the maker of the statement. The government concedes that this statement is not admissible against Mitziga but argues that, at a joint trial, the statement can and should be admitted against Likovski with an instruction to the jury that it cannot consider the statement as evidence against Mitziga. (The government also more or less agreed during a hearing held on July 9 that it would not oppose an instruction to the jury that it could not draw an inference of, or speculate about, Mitziga's

2

guilt based on Likovski's statement.)  The government argues that admission of the statement at trial under these circumstances does not violate Mitziga's rights or otherwise unfairly prejudice him because the statement does not name him.  The government acknowledges that Mitziga is (or at least was at the time) a member of the golf club, but it notes that Individual A also is or was a member, and as a result it contends the jury would not assume that "the member" referenced in the statement was Mitziga.

*Bruton v. United States*, 391 U.S. 123 (1968), holds that "a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987).

In *Richardson*, the Court considered a confession by one defendant that had been redacted "so as to omit all reference to his codefendant . . .—indeed, to omit all indication that *anyone* other than [the confessing defendant] and a third person had participated in the crime."  *Gray v. Maryland*, 523 U.S. 185, 190-91 (1998) (cleaned up).  The redacted confession indicated that the confessing defendant and the third person had discussed the murder in the front seat of a car while traveling to the victim's home, but it "contained no indication that Marsh [the nonconfessing defendant]—*or any other person*—was in the car." *Id.* at 191 (emphasis added).  The connection to Marsh was made only when Marsh herself testified at trial that she had been in the back seat of the car.  *Id.*  The Court held that the redacted confession fell outside the *Bruton* rule and was admissible in a joint trial with appropriate limiting instructions.  It distinguished the

3

confession in *Bruton* as one that was "incriminating on its face" and "expressly implicat[ed]" the nonconfessing defendant. *Id.*

*Gray v. Maryland* considered a confession by a nontestifying codefendant that, on the relevant parameters, fell somewhere between the one in *Bruton* and the one in *Richardson.* Specifically, the confession was redacted by substituting for the nonconfessing defendant's name a blank space or the word "deleted." *Gray*, 523 U.S. at 188. But it still indicated the *existence* of the nonconfessing defendant, which the Court found significant:

> Unlike *Richardson*'s redacted confession, this confession refers directly to the "existence" of the nonconfessing defendant. The State has simply replaced the nonconfessing defendant's name with a kind of symbol, namely, the word "deleted" or a blank space set off by commas. The redacted confession, for example, responded to the question "Who was in the group that beat Stacey," with the phrase "Me, , and a few other guys." And when the police witness read the confession in court, he said the word "deleted" or "deletion" where the blank spaces appear.

*Id.* at 192. The Court held that the redacted confession "still falls within *Bruton*'s protective rule." *Id.* The Court used this hypothetical to illustrate the problem:

> Consider a simplified but typical example, a confession that reads, "I, Bob Smith, along with Sam Jones, robbed the bank." To replace the words "Sam Jones" with an obvious blank will not likely fool anyone. A juror somewhat familiar with criminal law would know immediately that the blank, in the phrase "I, Bob Smith, along with     , robbed the bank," refers to defendant Jones. A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank. A more sophisticated juror, wondering if the blank refers to someone else, might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that Jones, not someone else, helped Smith commit the crime.

*Id.* at 193.  The bottom line, the Court said, is that both "*Bruton*'s protected statements and statements redacted to leave a blank or some other similarly obvious alteration function the same way grammatically.  They are directly accusatory" of the nonconfessing defendant.  *Id.* at 194.  The Court acknowledged that a confession "that uses a blank or the word 'delete' (or for that matter, a first name or a nickname) less obviously refers to the defendant than a confession that uses the defendant's full and proper name."  *Id.*  And it acknowledged that in some instances "the person to whom the blank refers may not be clear"—for example, there the confession uses multiple blanks even though only one other defendant appears at trial in in which the trial indicates there are more participants.  *Id.* at 194-95.  But the Court concluded that "[n[onetheless . . . considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results."  *Id.* at 194.

      Likovski's confession—which is what the government calls it, *see* Gov't Resp. to Defs.' Mots. to Sever (dkt. 92) at 9—is not materially different from the one in *Gray*.  Unlike in *Richardson*, where any reference to the *existence* of the nonconfessing defendant was removed, Likovski's statement directly refers to the existence of another specific participant, referenced as "the member" of the golf club, and describes his participation.  The statement does not name the other participant, but that's not crucial, as is clear from *Gray* itself.  It will be obvious from the evidence to be introduced at trial that this is a reference to a member of the golf club who has property in the south suburbs and wants assistance on his property tax assessment—a direct reference to

5

Mitziga. It is true, as the government points out, that Likovski's statement potentially could also refer to Individual A, but as in *Gray*, Individual A is not going to be on trial, and the reference is overwhelming likely to be interpreted as referring to Mitziga, who will be at the defense table along with Likovski. The sanitized reference to "Individual A" (which, to be fair, is sanitized in the statement that Likovski read to the grand jury, not just for purposes of trial) is not a generic reference to "another guy," "someone else," or "other people"—it's a specific reference to a member of the golf club who has property in the south suburbs that's up for assessment.

This is what distinguishes this case from *Samia v. United States*, 599 U.S. 635 (2023), on which the government relies. In *Samia*, a law enforcement agent testified that the nontestifying codefendant, Stillwell, had confessed to "a time when the *other person* he was with pulled the trigger on that woman in a van that he and Mr. Stillwell was driving." *Id.* at 642. Other portions of the agent's testimony used the term "other person" to reference someone with whom Stillwell had traveled and lived and who carried a particular firearm. *Id.* The Court noted that *Richardson* and *Gray* "distinguish between confessions that directly implicate a defendant and those that do so indirectly," and it held that the statement introduced against Samia did not "directly" implicate him: "the neutral references to some 'other person' were not akin to an obvious blank or the word 'deleted.'" *Id.* at 653. Thus the statement's admission, along with a limiting instruction, fell outside the *Bruton* rule.

That is not true here; the reference at issue is not a "neutral reference[ ] to some 'other person'" or anything close to it. Rather, it is a reference to a specific person who is a member of the golf club and who has property in the south suburbs and is looking

6

for an assessment reduction. The fact that this might be interpreted to refer to a particular other person ("Individual A") other than Mitziga—does not save it, make this case like *Sania*, or materially distinguish it from *Gray*, because this is a statement that directly identifies, describes, and implicates another person, as opposed to a giving a generic reference. The Court has taken into account the usual rule that defendants charged together—particularly on a conspiracy charge—should be tried together, and it has considered the government's interest in not having to put on its witnesses twice. But this does not outweigh Mitziga's right to a fair trial or his right to confront the witnesses against him. And the Court is not persuaded that a limiting instruction, even the enhanced version that Mitziga has proposed, would cure the problem, enable Mitziga to get a fair trial, or satisfy his Confrontation Clause rights.

## Conclusion

For the reasons stated above, the Court grants defendant Mitziga's motion for severance (dkt. no. 58). The two defendants' cases are severed for purposes of trial. Mitziga's case will proceed to trial on July 30 as previously scheduled. A telephonic conference is set for July 15, 2024 at 8:45 a.m. to set a new date for Likovski's trial. The following call-in number will be used 650-479-3207, access code 980-394-33.

Date: July 10, 2024

_____
MATTHEW F. KENNELLY
United States District Judge

7